**Ronald BRADLEY et al., Plaintiffs,**

v.

**William G. MILLIKEN, Governor of the State of Michigan, et al., Defendants.**

Civ. No. 35257.

United States District Court,
E. D. Michigan, S. D.

Oct. 23, 1978.

Louis Lucas, Memphis, Tenn., Thomas Atkins, Boston, Mass., for plaintiffs.

George T. Roumell, Jr., Theodore Sachs, Detroit, Mich., George McCarger, Jr., Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION

DeMASCIO, District Judge.

On August 7, 1978, we entered our faculty reassignment order which provided for the distribution of not more than 60% of teachers of one race in each school. We concluded that this distribution was essential to assure an adequate interaction between Detroit school children and teachers of both races. We provided that this distribution should take into account the qualifications of the teacher to teach the subject and grade level, age, teaching experience and sex. We further believed that this distribution could be accomplished with minimum disruption to the present faculty assignments. *See* Memorandum Opinion, August 7, 1978, at 36. On August 21, 1978, the defendant Detroit Board of Education filed a motion "To Modify in Part the Faculty Reassignment Section of August 7, 1978 Order." The Detroit Board seeks a modification of paragraph 6 of that order, which provides:

No transfer of teachers at a school shall occur if the faculty at that school does not exceed 60% of one race and further shall not occur if the faculty at that school does not exceed 65% of one race and must maintain that level to assure balance of staff or school stability.[1]

The Detroit Board contends that it is unable to achieve a distribution of 60% of teachers of one race in each school so long as paragraph 6 remains in effect. Hence, although we inserted paragraph 6 as a guideline to assure that teachers would not be transferred indiscriminately, the Detroit Board interprets that paragraph as a limitation upon its ability to comply with the most essential provision in our order. In fact, at a hearing on September 25, 1978, counsel for the Detroit Federation of Teachers forthrightly acknowledged to the court that all counsel interpreted paragraph 6 as a limiting provision which precluded the Detroit Board from complying with the first provision of our order.

We decline the invitation to modify our August 7, 1978 order, since we do not interpret paragraph 6 as the parties do. Instead, we will treat the Detroit Board's motion to modify as a motion for clarification of our order. The Detroit Board's prin-

---

1. The full text of the faculty reassignment portion of our August 7, 1978 order is set forth in the appendix.

cipal obligation under our order is to submit a plan which provides for the distribution of not more than 60% of teachers of one race in each school. Paragraphs 2 through 7 of our order are not to be treated as limitations on the type of plan the Detroit Board is required to develop, but rather as guidelines to follow during the preparation of the plan. In preparing the faculty reassignment plan, the Detroit Board must seek to achieve as far as possible the percentage distribution required under paragraph 1. In achieving that goal, deviations may be made from the guidelines provided in paragraphs 2 through 7. In those cases where the Detroit Board cannot achieve the objectives of paragraph 1 and remain consistent with the guidelines of the other paragraphs, the Detroit Board should plan to meet the requirements of paragraph 1 and state in the plan why and how the other guidelines could not be satisfied. In examining the plan, the court will then decide whether such deviations and infringements of the guidelines were essential to provide the most acceptable plan. The Detroit Board has wide latitude in deciding which guidelines it shall follow and when deviations will be made.

It is apparent in this record that the Detroit Board has not yet submitted the plan required by our August 7, 1978 order. We accept the Detroit Board's explanation for its noncompliance expressed at the hearing on its motion. The Detroit Board will be given until November 1, 1978, to submit a plan that conforms to the provisions of our order.

The intervening defendant Detroit Federation of Teachers filed on August 30, 1978, a motion to "Enjoin Against Implementation of Board's Residency Resolution of July 1, 1978." We see little wisdom in the Detroit Board's action in adopting this resolution at this time when the Detroit Board knew that it would likely have to submit a new plan for faculty reassignment. As the record now stands, however, we cannot determine whether the resolution will have any affect upon the desegregation effort in this district. If it should appear that the resolution does adversely impact the deseg-

regation effort, the court will reconsider the DFT motion to enjoin its enforcement.

Accordingly, IT IS ORDERED that the defendant's motion to modify the provisions of our August 7, 1978 order be and the same hereby is DENIED;

IT IS FURTHER ORDERED that the motion of the intervening defendant Detroit Federation of Teachers to enjoin the enforcement of the July 1, 1978 resolution be and the same hereby is DENIED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that the Detroit Board shall, on or before November 1, 1978, submit an appropriate plan for reassignment of teachers to achieve a distribution of not more than 60% of teachers of one race in each school.

## APPENDIX

### FACULTY REASSIGNMENT

IT IS FURTHER ORDERED that the Detroit Board shall submit, within fourteen (14) days from the date of this order, a plan for reassignment of faculty pursuant to the following guidelines:

1) The plan shall provide for distribution of not more than 60% of teachers of one race in each school.

2) Such distribution shall balance faculty first by qualifications to teach the subject and grade level then by race, teaching experience, sex and age.

3) Prior to any required transfer, the school administration shall consult with principals of each affected school to determine which teachers and/or subject areas the principal believes are expendable.

4) In making all transfers, the plan shall take into account seniority rights of teachers as set forth in the current Detroit Federation of Teachers' collective bargaining agreement.

5) Schools may have faculties that vary to 65% of one race to accommodate appropriate balancing and to take into account stability of school and staff.

6) No transfer of teachers at a school shall occur if the faculty at that school does not exceed 60% of one race and further shall not occur if the faculty at that school does not exceed 65% of one race and must maintain that level to assure balance of staff or school stability.

7) When the Detroit Board finds it impossible to make transfers that reduce faculties to 60% of one race and remain consistent with the provisions of this order, it shall so state and provide a detailed explanation thereof.